Julianne P. Blanch, USB #6495
Katherine Venti, USB #9318
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
JBlanch@parsonsbehle.com
KVenti@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Defendant Asplundh Tree Expert Co.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SCOTT K. MARLAND and JENNIFER D. MARLAND, as conservators for the minor child, J.S.M.,<br><br>          Plaintiffs,<br><br>vs.<br><br>ASPLUNDH TREE EXPERT CO., a Pennsylvania corporation,<br><br>          Defendant. | **DEFENDANT ASPLUNDH TREE EXPERT CO.'S MOTION TO EXCLUDE THE IMPROPER OPINIONS OF PLAINTIFFS' REBUTTAL EXPERT**<br><br>Case No. 1:14-cv-000040<br><br>The Honorable Ted Stewart |

Pursuant to Rules 26(a)(2)(D) and 37 of the Federal Rules of Civil Procedure, Defendant Asplundh Tree Expert Co. ("Asplundh") moves the Court to exclude certain opinions of Plaintiffs' rebuttal expert arborist, Benjamin Harris ("Mr. Harris").  Plaintiffs retained Mr. Harris solely as a rebuttal expert, but portions of his report—and thus his expected testimony—exceed the proper scope of a rebuttal opinion.  Plaintiffs' failure to comply with Rule 26(a)'s expert disclosure

requirements is unjustified and has prejudiced Asplundh. Mr. Harris' improper opinions should therefore be excluded from trial.

## I. SUCCINCT STATEMENT OF PRECISE RELIEF SOUGHT AND SPECIFIC GROUNDS FOR THE MOTION

Rule 26(a)(2)(D)(ii) of the Federal Rules of Civil Procedure permits a party to disclose expert testimony "intended *solely* to contradict or rebut evidence on the same subject matter identified by another party . . . ." (emphasis added).  As applied by courts within the Tenth Circuit, this rule requires a rebuttal expert to limit his or her opinion to contradicting the opposing party's affirmative evidence.  A party may not present new arguments in a rebuttal report, nor may it use the report as a means for bolstering its case-in-chief.  Under Rule 37 of the Federal Rules of Civil procedure, an expert's improper "rebuttal" opinion should be excluded from trial unless the failure was substantially justified or harmless.

This case involves a minor plaintiff, J.S.M., who received electrical injuries in 2009 when a tree branch fell on an electrical transmission line.[1]  The branch severed the energized line, which fell into the backyard where J.S.M. was playing, leading to his injuries.  Plaintiffs and Defendant retained competing experts—Mr. Jaak Gilmore ("Mr. Gilmore") and Dr. Daniel Marion ("Dr. Marion"), respectively—to offer opinions on the cause of the limb's failure.  Plaintiffs subsequently designated Mr. Harris as an ostensible rebuttal expert to contradict Dr. Marion's opinions.

---

[1] Pursuant to Fed. R. Civ. P. 5.2(a)(3) and Utah Rule of Judicial Administration 4-202.09(9)(C)(vi), the minor Plaintiff is identified only by his initials in this filing, and any instance where his name appears in the attached exhibits has been redacted to show only his initials.

Mr. Harris articulates three opinions in his purported "rebuttal" Report. However, two of these three opinions exceed the proper scope of a rebuttal opinion. Instead of solely contradicting Dr. Marion's opinion, Mr. Harris offers opinions that merely repeat, reinforce, supplement, and agree with the opinion of Plaintiffs' initial expert, Mr. Gilmore. These opinions are not true "rebuttal" opinions as contemplated by Rule 26(a). Because this failure to comply with Rule 26(a) was not substantially justified or harmless, Mr. Harris' improper opinions should be excluded from trial pursuant to Rule 37.

## II.     RELEVANT FACTS

1.     On March 4, 2014, Plaintiffs filed this Complaint against Asplundh, alleging injuries to J.S.M. resulting from a June 30, 2009 accident in Bountiful City when a tree branch fell on an electrical transmission line. Complaint, ECF No. 2-2. The line failed and, while still energized, fell into the backyard where J.S.M. was playing. *Id.* Plaintiffs' allege that Asplundh's negligence caused the branch to fall, which in turn resulted in J.S.M.'s injuries. *Id.*

2.     The Court's Fifth Amended Scheduling Order, ECF No. 39, set forth the due dates for the parties' Rule 26(a)(2) expert reports: Plaintiffs' affirmative reports were due October 15, 2015; Asplundh's affirmative reports were due February 19, 2016; and any rebuttal reports were due March 18, 2016.

3.     Plaintiffs timely designated Mr. Gilmore, a certified arborist, who offered an expert opinion on "the branch failure . . . that caused the power line failure that electrocuted [J.S.M.]."[2] Ex. 1, October 14, 2015 Report of Mr. Gilmore.

---

[2] Asplundh has contemporaneously filed a Motion in Limine seeking to preclude Plaintiffs' counsel and witnesses from erroneously claiming that J.S.M. was "electrocuted."

4. Mr. Gilmore, in relevant part, opines as follows:

> It is my opinion that, in lieu of tree removal, an alternative cause of [J.S.M.'s] electrocution was Asplundh's failure to remove the subject limb/branch . . . . Based on its origination point (the crotch of two larger branches), the tree limb/branch in question began as a water sprout and as such, should have been removed during Asplundh's September 27, 2005 pruning. Instead, based on evidence the subject limb/branch was trimmed. Water sprouts have inherently weak attachment points.
>
> According to the ANSI [A300] standards[3] . . ., this weakly attached tree limb should have been removed . . . .
>
> . . . .
>
> The ANSI A300 [] states: 'Branches that, when cut, will produce watersprouts that would grow into facilities and/or utility space should be removed.' Asplundh did not remove the subject tree limb/branch in question during its September 27, 2005 pruning in violation of ANSI standards.

*Id.* at 2-3. Mr. Gilmore then briefly describes the applicable ANSI A300 standard, and opines that Asplundh violated the standard by trimming the branch instead of removing it. *Id.* at 3. Finally, Mr. Gilmore states that Asplundh's method of trimming the branch—referred to as a "stub cut"—failed to adhere to industry standards. *Id.*

5. Subsequently, Asplundh timely designated Dr. Marion, a doctor of plant health and pathology, to opine on the structural failure of the branch at issue. Ex. 2, Asplundh's Feb. 19, 2016 Expert Disclosures, at 2-3; Ex. 3, Report of Dr. Marion.

6. Dr. Marion offers an affirmative opinion in his Report "that tissue degenerating decay" entered the subject branch before it was trimmed. Ex. 3 at 14. He states that decay at the branch's point of contact with the trunk—rather than decay at the area where the branch was

---

[3] "ANSI" is the acronym for the American National Standards Institute.

4852-7087-2379 v2

trimmed before the accident—resulted in the breakage of the subject branch. *Id.* at 15-16, 19. He therefore concludes that the branch did not fail at the point where the stub cut was made. *Id.* at 20.

7. Dr. Marion also addresses Mr. Gilmore's opinions that Asplundh should have entirely removed the subject branch or, alternatively, that tree was improperly pruned by performing a stub cut. *Id.* at 17-18. Dr. Marion opines that the arborist likely made a stub cut "to avoid coming into contact with crotch area staining or disease in the main trunk, which can lead to a huge trunk defect and subsequent destabilization. Rather, the sub cut made about 7 inches away appears to be an attempt to avoid exacerbating disease or decay . . . ." *Id.* at 17. Dr. Marion further states that had the entire branch been removed instead of trimmed, a problematic branching pattern leading to "a high probability of failure" would have resulted at the place of the removal. *Id.* at 18. He additionally notes that "the presence of completely decayed branches at the point of contact with the trunk would have almost ensured the spread of decay into the newly formed branches and trunk area." *Id.* at 18.

8. Following Asplundh's disclosure of Dr. Marion's Report, Plaintiffs designated Mr. Harris, a certified arborist, as a rebuttal expert "intended solely to contradict or rebut evidence and opinions on the same subject matter identified in Dr. Marion's expert report." Ex. 4, Plaintiffs' March 18, 2016 Designation of Rebuttal Expert Witnesses, at 3-4; Ex. 5, March 10, 2016 Report of Mr. Harris.

9. In Mr. Harris' report, he purports to offer three "rebuttal" opinions to Dr. Marion's report. Ex. 5 at 1-2. First, he seeks to rebut Dr. Marion's affirmative opinion that "stem degenerating decay originated in the broken branch before the stub cut made" before the accident. *Id.* at 1. Because this is a response to the opinion that decay caused the branch to fall -- a subject

not raised by Mr. Gilmore but raised only by Dr. Marion—this is a true rebuttal, and Asplundh does not seek to exclude this part of Mr. Harris' report.

10. In his second and third opinions, however, Mr. Harris addresses the portion of Dr. Marion's Report that was merely responsive to Mr. Gilmore's opinion regarding the propriety of the stub cut. *Id.* at 2. Specifically, in his second opinion, Mr. Harris elaborates:

> Making stub cuts is not a practice that is taught or encouraged at any level of arboricultural education or training and, as Mr. Gillmore [sic] has pointed out, violates ANSI A300 standards . . . . [W]hatever the rationale was behind making the stub cut, it was improper and violated the accepted professional standard.

*Id.* Similarly, in Mr. Harris' third opinion, he agrees with Mr. Gilmore, adding that "[i]t is a violation of industry standards for any arborist to perform stub cuts on a fast growing tree like Siberian elm in close proximity to energized power lines." *Id.*

11. Mr. Harris concludes his Report by stating, "I agree with Mr. Gilmore that . . . the improper cut made by Asplundh in 2005 contributed directly to the branch failure and electrocution of [J.S.M.] in 2009." *Id.*

## III. ARGUMENT

### A. Mr. Harris' Second and Third Opinions Exceed the Permissible Scope of Rebuttal Expert Opinion.

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) permits rebuttal expert testimony "intended solely to contradict or rebut evidence on the same subject matter identified by another party." A party may not present new arguments in a rebuttal report, *see 1–800 Contacts, Inc. v. Lens.com, Inc.,* 755 F. Supp. 2d 1151, 1167 (D. Utah 2010) (*rev. in part on other grounds*, 722 F.3d 1229 (10th Cir. 2013)), nor may a party use a rebuttal report to bolster its case-in-chief, *see Ashike v. Mullen Crane & Transp., Inc.,* No. 2:12-CV-0011, 2014 WL 61142, at *3–4 (D. Utah Jan. 8, 2014).

Rather, "[t]he proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008) (internal quotation omitted).  In this regard, "[a] plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief." *Stanfield v. Dart*, No. 10 C 6569, 2013 WL 589222, at *3 (N.D. Ill. Feb. 14, 2013) (internal quotation omitted) (cited approvingly in *Ashike*). "Otherwise the plaintiff could reverse the order of proof, in effect requiring the defendants to put in their evidence before the plaintiff put in his." *Braun v. Lorillard Inc.*, 84 F.3d 230, 237 (7th Cir. 1996).

Mr. Harris' second and third "rebuttal" opinions amount to back-door attempts to bolster and supplement Plaintiffs' case-in-chief opinions of Mr. Gilmore.  Mr. Gilmore will testify at trial, as part of Plaintiffs' case-in-chief, that the entire branch should have been removed and that in the alternative, whoever made the stub cut failed to adhere to the ANSI A300 industry standards for pruning trees.  SOF ¶¶ 3-4.  Then, during Asplundh's case-in-chief, Dr. Marion will testify that removing the entire branch was not advisable because it would have created the same "waterspouting" that a stub cut would create, but would have also have "ensured the spread of decay into the newly formed branches and trunk area." SOF ¶7.  Dr. Marion will also testify that the allegedly improper stub cut is irrelevant because the branch failed at the point where it connected to the trunk due to tissue- degenerating decay.  SOF ¶¶ 6-7.  During their rebuttal, Plaintiffs may properly attack Dr. Marion's opinion that decay at the point where the branch connected to the trunk caused the branch to fall.  They may do so by calling Mr. Harris to testify why he believes Dr. Marion is wrong in this regard.  This testimony of Mr. Harris, as presented in

his first opinion in his Report, SOF ¶ 9, is proper rebuttal expert testimony because it seeks to contradict affirmative evidence offered by Asplundh.

By contrast, Plaintiffs may not offer a second expert to testify in rebuttal on the same opinions expressed by their case-in-chief expert Mr. Gilmore, regarding the failure to remove the entire branch and the alleged failure to adhere to industry standards through a stub cut.  These opinions merely expand upon Plaintiffs' case-in-chief evidence.  In this regard, Mr. Harris' second and third opinions—in which he explains how industry standards were violated by performing a stub cut and, alternatively, by not removing the entire branch—only repeat, supplement and reinforce the prior affirmative opinion of Mr. Gilmore.  SOF ¶¶ 4, 10-11.  Accordingly, these are not true rebuttal opinions.

Moreover, Plaintiffs cannot use Mr. Harris' rebuttal opinions to cure shortcomings in Mr. Gilmore's report.  *See, e.g.*, *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004) (noting that a party may not use a rebuttal report to cure deficiencies in the party's case-in-chief).  A rebuttal report does not provide an opportunity to extend "the deadline by which a party may deliver the lion's share of its expert information." *Smith v. Wal-Mart Stores, Inc.*, No. 2:11-CV-01520-MMD, 2012 WL 4051925, at *1 (D. Nev. Sept. 13, 2012).  Under the guise of a "rebuttal" opinion, Plaintiffs use Mr. Harris' Report to more thoroughly support its case-in-chief evidence—as set forth in Mr. Gilmore's Report—that Asplundh's actions in supposedly making the stub cut or removing the branch entirely, failed to comply with industry standards.  Indeed, Mr. Harris acknowledges that his opinions merely piggyback on the opinion of Mr. Gilmore: "*[A]s Mr. Gillmore* [sic] *has pointed out,* [sub cuts] violate[] ANSI A300 standards . . . ."  SOF ¶ 10 (emphasis added); "*I agree with Mr. Gilmore that* . . . the improper cut made by Asplundh in 2005

8

contributed directly to the branch failure and electrocution of [J.S.M.] in 2009[;]" SOF ¶ 11 (emphasis added).  The Court should not permit Plaintiffs to use the rebuttal expert disclosure deadline as a means to extend the earlier deadline by which Plaintiffs were required to make their affirmative expert disclosures.  SOF ¶ 2.

"The purpose of a rebuttal opinion is just that—to rebut evidence offered by the adverse party."  *RMD, LLC v. Nitto Americas, Inc.*, No. 09-2056-JAR-DJW, 2012 WL 5398345, at *11 (D. Kan. Nov. 5, 2012).  Mr. Harris' second and third opinions do not rebut any affirmative evidence offered by Asplundh, but rather directly bolster, supplement, and expand upon Plaintiffs' case-in-chief.  Accordingly, these opinions fall outside the permissible bounds of a Rule 26 rebuttal expert report.

## B. Plaintiffs' Failure to Comply With Rule 26(a)'s Expert Disclosure Requirements was not Substantially Justified or Harmless

Under Federal Rule of Civil Procedure 37(c)(1), a party's failure to comply with Rule 26(a)'s expert disclosure requirements precludes use of the offending expert opinions "unless the failure was substantially justified or harmless."  *See ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1176 (10th Cir. 2011).  Plaintiffs have the burden of establishing that their failure to comply with Rule 26 was substantially justified or harmless.  *See Sender v. Mann*, 225 F.R.D. 645, 655 (D. Colo. 2004).  They cannot do so.

Mr. Harris' second and third opinions serve to bolster Plaintiffs' case-in-chief, not to refute Dr. Marion's opinions.  Because these opinions are affirmative expert evidence, Plaintiffs should have disclosed these opinions pursuant to the Scheduling Order date of October 15, 2015.  SOF ¶ 2.  Instead of meeting this deadline, Plaintiffs disclosed Mr. Harris' Report on March 18, 2016—the rebuttal expert deadline.  SOF ¶ 8.  Plaintiffs' cloaking of Mr. Harris' affirmative expert

9

testimony as rebuttal evidence has prejudiced Asplundh.  The parties agreed to—and the Court approved—a staggered expert discovery plan in which Asplundh's expert disclosures were due after Plaintiffs' expert disclosures.  SOF ¶ 2.  This sequencing was designed to mirror the order in which evidence will be presented at trial, and to provide Asplundh the opportunity to have its expert fully review the affirmative opinions of Plaintiffs' experts prior to forming his own opinion.  Because Plaintiffs used Mr. Harris' opinions to repeat their case-in-chief claim that Asplundh failed to comply with industry standards, Plaintiffs' untimely disclosure of Mr. Harris' affirmative expert opinions deprives Dr. Marion of the chance to fully address and respond such claims.  In light of this prejudice and Plaintiffs' lack of any justification for their failure to comply with Rule 26(a)'s expert disclosure requirements, the court should exclude Mr. Harris' second and third opinions from trial.

## IV.  CONCLUSION

Mr. Harris' second and third opinions are not truly rebuttal opinions because they do not contradict or refute Dr. Marion's own opinions.  Rather, they serve to directly bolster Plaintiffs' case-in-chief by providing a more thorough explanation of Mr. Gilmore's opinion that Asplundh failed to comply with industry standards.  Thus, Mr. Harris' second and third opinions amount to affirmative expert testimony that Plaintiffs were required to disclose by October 15, 2015, which they failed to do.  This failure is not substantially justified and has deprived Asplundh of the opportunity to have its expert fully address these opinions.  Asplundh respectfully requests that the Court prohibit Mr. Harris from testifying as to his second and third opinions in his "rebuttal" report, and prohibit Plaintiffs from using such opinions at trial.  Such use would be an improper end-run around the established expert disclosure requirements and deadlines.

RESPECTFULLY SUBMITTED this 8th day of November, 2016.

/s/ *Julianne P. Blanch*
Julianne P. Blanch
Katherine Venti
PARSONS BEHLE & LATIMER

Attorneys for Defendant Asplundh Tree Expert Co.

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of November, 2016, I caused to be served via ECF filing, a true and correct copy of the foregoing **MOTION TO EXCLUDE THE IMPROPER OPINIONS OF PLAINTIFFS' REBUTTAL EXPERT** to all counsel of record.

*/s/ Candace Johns*

4852-7087-2379 v2