IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SCOTT K. MARLAND and JENNIFER D. MARLAND, as conservators for the minor child, J.S.M., <br><br> Plaintiffs, <br><br> v. <br><br> ASPLUNDH TREE EXPERT CO., a Pennsylvania corporation, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT <br><br><br><br> Case No. 1:14-CV-40 TS <br><br> District Judge Ted Stewart |

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs seek judgment as a matter of law on the duty and breach elements of their negligence claim against Defendant.  For the reasons discussed below, the Court will deny the Motion.

## I.  BACKGROUND

Since 1997, Defendant Asplundh Tree Expert Co. ("Asplundh") has contracted with Bountiful City Light and Power ("BCLP") to provide power line clearance services.  Under that contract, Asplundh's "responsibility is limited to providing line clearance so as to prevent interruption of service by trees or tree limbs coming into contact with the lines or other electrical equipment."[1]

Under the agreement, Asplundh had the ability to both trim and remove trees.  The agreement allowed for the removal of "dead or defective and fast-growing weed trees located so

---

[1] Docket No. 54 Ex. A § 1(b).

as to be a hazard to [BCLP's] lines" when "practical and permissible."[2]  However, any removal required written permission from the property owner and BCLP.[3]

Pursuant to the arrangement between BCLP and Asplundh, BCLP directed where Asplundh would perform line clearance.  Specifically, BCLP would provide Asplundh with an area in which to work called a feeder.  Asplundh was then responsible for clearing the lines along that feeder.  This would include determining what trees needed to be trimmed or removed, obtaining the necessary approvals, then doing the actual trimming or removing.

On September 27, 2005, Asplundh trimmed two trees at the rental home of Lyle Henderson, located at 741 West 3200 South in Bountiful, Utah.  One of those trees was a large Chinese or Siberian Elm (the "subject tree").[4]  Asplundh trimmed the subject tree, but did not remove it.  There is no evidence that Asplundh recommended to BCLP that the subject tree be removed.

On June 30, 2009, a limb from the subject tree fell onto a power line.  The power line eventually failed and, while still energized, fell into a neighboring backyard and onto a swing set where Plaintiff J.S.M. was playing.  J.S.M. sustained severe electrical burns and injuries as a result.  After the incident, and upon receiving approval from Mr. Henderson, BCLP removed the subject tree.

---

[2] *Id.* § 3(a).

[3] *Id.* § 2(b) & 3(a).

[4] Various individuals testified that this type of tree is a fast-growing weed tree.  Fast-growing trees, like the subject tree, fail or break more frequently than slow-growing trees.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]  In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[6]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[7]

## III.  DISCUSSION

"To establish a claim of negligence, the plaintiff must establish four essential elements: (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages."[8]

Plaintiffs seek partial summary judgment as to the first two elements: duty and breach.

The existence of a duty of care is a legal issue for the Court to decide.[9]  If a duty of care is owed, the question becomes whether the required standard of care was breached. "[O]rdinarily, whether a defendant has breached the required standard of care is a question of

---

[5] Fed. R. Civ. P. 56(a).

[6] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[7] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[8] *Gonzalez v. Russell Sorenson Constr.*, 279 P.3d 422, 428 (Utah Ct. App. 2012) (quotation marks omitted).

[9] *Normandeau v. Hanson Equip., Inc.*, 215 P.3d 152, 157 (Utah 2009).

fact for the jury."[10] "Accordingly, summary judgment is inappropriate unless the applicable standard of care is fixed by law and reasonable minds could reach but one conclusion as to the defendant's negligence under the circumstances."[11]

A.    DUTY

Plaintiff asserts that Defendant's duty of care arises under Restatement (Second) of Torts § 324A, which has been adopted by the Utah Supreme Court.[12]   Section 324A states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.[13]

In this case, there is evidence that Asplundh has undertaken to render services to BCLP which Asplundh should recognize as necessary for the protection of a third person or his things. Asplundh rendered line clearance services to BCLP for consideration.  Utah law imposes on utility companies like BCLP the highest degree of care to prevent people from coming in contact with high-voltage electricity.[14]  Line clearance is necessary, not only to prevent interruption of

---

[10] *RJW Media, Inc. v. CIT Grp./Consumer Fin., Inc.*, 202 P.3d 291, 294 (Utah Ct. App. 2008) (alteration in original) (quotation marks omitted).

[11] *Id.* (quotation marks omitted).

[12] *See Alder v. Bayer Corp.*, 61 P.3d 1068, 1077–81 (Utah 2002) (adopting and applying § 324A).

[13] Restatement (Second) of Torts § 324A.

[14] *Brigham v. Moon Lake Elec. Ass'n*, 470 P.2d 393, 395 (Utah 1970) ("[A] high degree of duty is upon one who transmits electricity in high tension wires to see that no harm befalls a person rightfully in proximity thereto when that person is himself guilty of no wrongdoing.  In other words, the highest degree of care must be used to prevent harm from coming to others.").

service, but also to prevent injuries that might result should tree limbs come into contact with electrical wires.[15]  Thus, Asplundh should have recognized that the services it provided were necessary for the protection of third parties and their property.  As a result, Asplundh may be liable to third persons for physical harm resulting from its failure to exercise reasonable care if at least one of subsections (a), (b), or (c) are met.

Subsection (a) "requires some change in conditions that increases the risk of harm to the plaintiff over the level that existed before the defendant became involved."[16]  "Subsection (b) comes into play as long as the party who owes the plaintiff a duty of care has delegated to the defendant any particular part of that duty."[17]  Subsection (c) applies when the harm is suffered because of reliance of the other or the third person upon the undertaking.  "The reliance element of subsection (c) is satisfied if, in relying on the defendant's undertaking, the employer 'neglect[s] or reduces[s]' its own safety program."[18]

As Plaintiffs correctly point out, there is evidence to support at least subsections (b) and (c).[19]  BCLP had a duty to prevent harm to others from its power lines and it delegated part of that duty—line clearance—to Asplundh.  Further, because Asplundh was performing line

---

[15] Docket No. 54 Ex. B, at 116:21–117:5; *Id.* Ex. C, at 2-1 (discussing hazards trees may pose with respect to power lines); *Id.* Ex. H, at 55:5–9.

[16] *Alder*, 61 P.3d 1078 (quoting *Canipe v. Nat'l Loss Control Serv. Corp.*, 736 F.2d 1055, 1062 (5th Cir. 1984)).

[17] *Id.* (quoting *Canipe*, 736 F.2d at 1062–63).

[18] *Id.* (quoting *Canipe*, 736 F.2d at 1063) (alterations in original).

[19] While Plaintiffs do not argue the applicability of subsection (a), there is evidence from Plaintiffs' expert, Jaak Gilmore, that Asplundh improperly trimmed the subject tree in 2005.  Mr. Gilmore opines that Asplundh's alleged failures, including this alleged improper trimming, caused the incident.  Docket No. 54 Ex. E, at 3–4.  Based upon this, there is also evidence to support subsection (a).

clearance on the particular feeder, BCLP did not.  Thus, BCLP relied upon Asplundh to conduct line maintenance so it would not have to.[20]  Based upon these facts, there is evidence that Asplundh owed Plaintiffs a duty of care.

## B.     BREACH

Having determined that there is sufficient evidence that Asplundh owed Plaintiffs a duty of care, the Court must next determine whether Asplundh breached that duty.  Plaintiffs argue that "Asplundh breached its duty of care by not removing or recommending to have removed the subject tree in 2005."[21]

Plaintiffs' expert witness, Jaak Gilmore, has opined that Defendant had a duty to remove the tree in question (or suggest its removal) if it was permissible, accessible, and the tree posed a hazard based on its type, size, and proximity to the power lines.[22]  For the purposes of summary judgment, the Court will accept this statement as setting forth the applicable standard of care.[23] Even under this standard, however, summary judgment is not appropriate.

The parties agree that before Asplundh could remove a tree, it was required to seek the permission of BCLP and the homeowner.  There is no evidence that Asplundh sought permission to remove the subject tree when it was trimmed in 2005, nor is there evidence that Asplundh

---

[20] BCLP did not rely exclusively on Asplundh for its line clearing services.  At all times, BCLP had an in-house trimming crew.

[21] Docket No. 54, at 36,

[22] *Id.* Ex. E at 2 ("Asplundh needed to remove trees if they met the following criteria: permissibility from the owner of the home and from BCLP, reasonability, dead, defective, fast growing or posing a hazard to the company power lines.").

[23] Because the Court will accept Plaintiffs' statement of the applicable standard of care for the purposes of this Motion, the Court need not consider whether a different standard of care might apply.

recommended to BCLP that the tree be removed.  Plaintiffs argue that the undisputed evidence demonstrates that permission would have been given by both BCLP and the homeowner, had Asplundh sought it.  Therefore, they argue that it would have been permissible to remove the tree.

The Court agrees that the undisputed evidence demonstrates that BCLP would have given permission to remove the tree.  Brent Thomas, BCLP's superintendent of operations, testified that if a tree needed to be removed and a customer was willing to remove it, then "permission will come easy."[24]  Similarly, Edward Boyd, Asplundh's regional supervisor, testified that, had his crew recommended the tree be removed, BCLP would have approved it.[25]  Indeed, Mr. Boyd could not remember a time when BCLP denied a recommendation that a tree be removed.[26]

The question of whether the homeowner, Mr. Henderson, would have given the required permission is in dispute.  At his deposition, Mr. Henderson testified that on other occasions he gave "carte blanche permission" to the utility to trim the tree and had previously told the trimmers to "[d]o what you need to do."[27]  Contrasting these statements is evidence that Mr. Henderson had refused permission to remove or even trim the subject tree in the past,[28] had told trimmers to leave as much of the tree as possible resulting in an inability to obtain the necessary clearances,[29] and was reluctant to remove the tree even after this accident.[30]  Based upon these

---

[24] Docket No. 54 Ex. D, at 36:20–25.

[25] *Id.* Ex. H, at 136:9–12.

[26] *Id.* at 136:5–8.

[27] *Id.* Ex. J, at 36:21–23; Docket No. 106 Ex. A, at 33:2–10.

[28] Docket No. 54 Ex. H, 150:3–12; *Id.* Ex. L, at 17:19–18:15, 33:6–34:7 *Id.* Ex. N, at 21:25–22:18.

[29] *Id.* Ex. B, at 125:2–126:5; *Id.* Ex. K, at 56:1–2; *Id.* Ex. N, at 20:8–21:4.

disputed facts, Plaintiff cannot show, as a matter of law, that removal of the tree would have been permitted by Mr. Henderson.

In their Reply, Plaintiffs argue that since Asplundh never asked Mr. Henderson to remove the tree during its 2005 visit, whether he would have denied permission to remove the tree is immaterial and speculative. This argument, however, conflicts with Plaintiffs' own argument and the opinion of its expert. In its Motion, Plaintiff argues that "there is overwhelming evidence that if Asplundh had recommended removal, permission from the homeowner and/or BCLP would have come easy."[31] Plaintiffs go on to cite Mr. Henderson's deposition testimony, discussed above, as partial support for this conclusion. Based on this evidence, Plaintiffs conclude that "there would have been permissibility to remove the tree had Asplundh recommended removal in 2005."[32]

Plaintiffs' expert, Mr. Gilmore, similarly relying on Mr. Henderson's deposition testimony, opines that there would be permissibility. In reaching this conclusion, Mr. Gilmore relies on what Mr. Henderson had done in the past to determine what would have happened had Asplundh sought permission to remove the subject tree. Thus, it makes sense that the Court similarly looks to Mr. Henderson's past conduct to determine whether permission would have been given if sought.

As set forth above, there is conflicting evidence concerning whether Mr. Henderson would have given Asplundh that permission based on Mr. Henderson's past conduct relative to the subject tree. While Mr. Henderson stated that he gave permission feely, the other record

---

[30] *Id.* Ex. D, at 54:16–55:21; Docket No. 64 Ex. J; *Id.* Ex. R.

[31] Docket No. 54, at 37.

[32] *Id.* at 38.

evidence calls his testimony into question.  Indeed, Mr. Henderson was reluctant to remove the subject tree even after being told of this accident.  Based upon these disputes, Plaintiffs have failed to demonstrate as a matter of law that Asplundh would have received permission from the homeowner to remove the subject tree and, therefore, have failed to demonstrate as a matter of law that Asplundh breached its duty of care.  Even if Plaintiffs could demonstrate permissibility, various disputes exist concerning whether removal was required under the relevant standard of care.  Therefore, summary judgment is inappropriate.

## IV.  CONCLUSION

It is therefore

ORDERED that Plaintiffs' Motion for Partial Summary Judgment (Docket No. 54) is DENIED.

DATED this 14th day of December, 2016.

BY THE COURT:

_____

Ted Stewart
United States District Judge