IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SCOTT K. MARLAND and JENNIFER D. MARLAND, as conservators for the minor child, J.S.M., <br><br>                Plaintiffs, <br><br> v. <br><br> ASPLUNDH TREE EXPERT CO., a Pennsylvania corporation, <br><br>                Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S CORRECTED MOTION TO PRECLUDE PLAINTIFFS' EXPERTS FROM TESTIFYING AT TRIAL THAT J.S.M. WILL BE UNABLE TO STUDY SCIENCE OR MATHEMATICS IN COLLEGE OR ATTEND GRADUATE SCHOOL <br><br> Case No. 1:14-CV-40 TS <br><br> District Judge Ted Stewart |

This matter is before the Court on Defendant Asplundh Tree Expert Co.'s Corrected Motion to Preclude Plaintiffs' Experts from Testifying at Trial that J.S.M. will be Unable to Study Science or Mathematics in College or Attend Graduate School. For the reasons discussed below, the Court will deny the Motion.

## I. BACKGROUND

Defendant seeks to preclude specified testimony of three expert witnesses retained by Plaintiffs to assess the lost future income of J.S.M.: Dr. Sam Goldstein, Ms. Dina Galli, and Mr. Jeremy Sharp. Plaintiffs retained Dr. Goldstein, a board-certified neuropsychologist, to evaluate J.S.M. Following the evaluation, Dr. Goldstein formed the following challenged opinions regarding J.S.M.'s capability to attain secondary education degrees: First, though J.S.M. may attend college, as a result of the accident at issue, he is not likely to major in areas related to science or mathematics. Second, as a result of the accident, J.S.M. is unlikely to attend graduate school in any area of study.

Plaintiffs also retained Ms. Galli, a rehabilitation counselor, to assess J.S.M.'s future employability and earning capacity. In making this assessment, Ms. Galli relied on Dr. Goldstein's opinions regarding J.S.M.'s secondary education possibilities. Similarly, Mr. Sharp, an economist, relied on Dr. Goldstein's opinions in his calculations regarding the total economic damages sustained by J.S.M.

Defendant argues that Dr. Goldstein's opinions are unreliable and unhelpful to the jury, and should therefore be precluded from trial in accordance with Rule 702 of the Federal Rules of Evidence. Furthermore, Defendant seeks to preclude the testimonies of Ms. Galli and Mr. Sharp so far as they rely on the specified opinions of Dr. Goldstein.

## II.  DISCUSSION

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 imposes a gatekeeper obligation on the Court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[1]  The Court must fulfill its gatekeeping duty by making specific findings on the record.[2]  "Specifically, the court must first determine whether an expert is qualified by knowledge, skill, experience, training, or

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

[2] *United States v. Yeley-Davis*, 632 F.3d 673, 684 (10th Cir. 2011).

education to render an opinion."[3] Second, the Court must determine whether the expert opinion

is both relevant and reliable.[4] "The inquiry envisioned by Rule 702 is . . . a flexible one"[5] and

"[t]he admission or exclusion of evidence lies within the sound discretion of the trial court and

cannot be reversed absent an abuse of discretion."[6]

Regarding the first inquiry, Defendant does not appear to challenge Dr. Goldstein's

qualifications. Dr. Goldstein received a Ph.D. in School Psychology from the University of Utah

in 1980 and is certified as both a school psychologist and a pediatric neuropsychologist.

Additionally Dr. Goldstein has served on a number of editorial, professional, and charitable

boards, as well as authored a number of tests, articles, and texts in the field of neuropsychology.[7]

The Court therefore finds that Dr. Goldstein is qualified to testify regarding his

neuropsychological evaluation of J.S.M. The primary issue for the Court in this matter is the

reliability and helpfulness of Dr. Goldstein's proffered testimony.

A.      RELIABILITY OF DR. GOLDSTEIN'S TESTIMONY

Defendant puts forth three arguments supporting its claim that Dr. Goldstein's opinions

are not reliable: (1) Dr. Goldstein has pointed to no scientific literature, statistics, or other

evidence that supports his opinions that J.S.M. will not be able to study in the fields of

mathematics or science or that he will not be able to attend graduate school; (2) Dr. Goldstein's

challenged opinions do not satisfy the requirement that medical opinions be expressed to a

---

[3] *Id.* (quotation marks omitted).

[4] *Daubert*, 509 U.S. at 589.

[5] *Id.* at 594.

[6] *Wheeler v. John Deere Co.,* 935 F.2d 1090, 1099 (10th Cir.1991).

[7] Docket No. 92 Ex. A.

"reasonable degree of medical certainty;" and (3) Dr. Goldstein's assessment was completed

when J.S.M. was in second grade and fails to take into account J.S.M.'s significant improvement

from second to third grade. The Court will address each argument in turn.

First, the Court rejects the argument that Dr. Goldstein's opinions are not supported by

the evidence. Although "[t]he proponent of expert testimony bears the burden of showing that

the testimony is admissible,"[8] they "need not prove that the expert is undisputably correct . . . .

Instead, [they] must show that the method employed by the expert in reaching the conclusion is

scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's

reliability requirements."[9] "[W]hen [an expert's] conclusion simply does not follow from the

data, a district court is free to determine that an impermissible analytical gap exists between

premises and conclusion," however, "asymptotic perfection" between data and conclusion is not

necessary.[10]

In conducting the neuropsychological assessment of J.S.M., Dr. Goldstein consulted

J.S.M.'s medical records, school records, and family history, conducted clinical interviews of

J.S.M., and employed approximately twenty tests and questionnaires.[11] Based on J.S.M.'s

---

[8] *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013).

[9] *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781.

[10] *Id.* at 1233–34.

[11] The tests and questionnaires used by Dr. Goldstein include:  Connors Comprehensive Behavior Rating Scales; Home Situations Questionnaire; Social Attributes Checklist (parent and teacher form); Comprehensive Executive Function Inventory (parent and teacher form); Teacher Observation Checklist; Elementary School Situations Questionnaire; Cognitive Assessment System; Peabody Picture Vocabulary Test; Expressive Vocabulary Test; Wechsler Intelligence Scale for Children-IV (selected subtests); Test of Memory and Learning; Gordon Diagnostic System; Purdue Pegboard; Developmental Test of Visual Motor Integration; Woodcock-Johnson III Tests of Achievement; Reversals Frequency Test; Resiliency Scales for Children; Revised

detailed neuropsychological assessment, Dr. Goldstein testified that the following observations contributed to his conclusions: First, upon reviewing the scores produced by J.S.M.'s assessment, Dr. Goldstein found an uncharacteristic discrepancy in J.S.M.'s strengths and weaknesses.[12] Specifically, Dr. Goldstein explained that J.S.M.'s demonstrated strengths, or areas in which J.S.M. scored above average, were high indicators of success in specific areas where J.S.M., in fact, demonstrated uncharacteristic weakness.[13] Dr. Goldstein further stated that this discrepancy was particularly surprising when considering both of J.S.M.'s parents have earned doctorate degrees and his older brother displays no signs of the same weaknesses or discrepancies.[14] Dr. Goldstein also explained that while some of J.S.M.'s assessment scores were consistent with people who receive a graduate degree, some were consistent with people who do not earn beyond a bachelor's degree, and others, particularly his "achievement" scores, were consistent with people who do not attend any additional schooling beyond high school.[15]

　　Notably, Defendant does not challenge the reliability of any of the methods employed or data acquired in Dr. Goldstein's assessment of J.S.M. Instead Defendant argues that Dr. Goldstein's challenged opinions "lack[] the necessary connection" to the data produced by the assessment.[16] More specifically, Defendant maintains that Dr. Goldstein has not referenced any specific data, literature, or other evidence that explains why the discrepancies and weaknesses

---

Children's Manifest Anxiety Scale; Structured Interviewer for Post-Traumatic Stress disorder. Docket No. 92 Ex. B, at 1−2.

[12] Docket No. 74 Ex. 5, at 71−72

[13] *Id.*

[14] *Id.* Ex. 1, at 16.

[15] *Id.* Ex. 5, at 95−96.

[16] Docket No. 74, at 12.

demonstrated by J.S.M. lead to the conclusions that J.S.M. will not major in mathematics or science and will not attend graduate school. The Court disagrees with Defendant's assessment.

To reach the conclusions at issue, Dr. Goldstein applied the data collected through J.S.M.'s assessment and his personal observations to his experience as a certified neuropsychologist and school psychologist. The Court does not believe this creates an "impermissible analytical gap." To the extent there may be distance between data and conclusion, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[17]

Second, Dr. Goldstein's remark that the challenged opinions are based on at least a 51 percent likelihood does not disqualify his testimony under Rule 702. "[W]e require an opining physician to offer an opinion with a reasonable degree of medical certainty; a hunch, even an educated hunch, is not enough."[18] Dr. Goldstein's opinions are based on a "reasonable degree of neuropsychological probability,"[19] which he equates to between 51 and 90 percent certainty.[20] Defendant argues that 51 percent certainty does not reach the requisite "reasonable degree of certainty." In support of its argument, Defendant cites *Valido-Shade v. Wyeth*,[21] which holds that

---

[17] *Daubert*, 509 U.S. at 596.

[18] *Warren v. Tastove*, 240 F. App'x 771, 773 (10th Cir. 2007).

[19] Docket No. 74, Ex. 1, at 16.

[20] The exact level of confidence Dr. Goldstein has in his opinions is not clear, however in his deposition he states that he made his conclusions "[w]ith an appreciation that you're not asking about a 90 percent probability, you're asking about a standard of 51 percent probability, with an understanding that if you really want to know what kids are going to be like at 16, you wait until they're 15 and a half." Docket No. 74 Ex. 5, at 98.

[21] 57 F. Supp. 3d 457 (E.D. Pa. 2014).

where an expert claims only 51 percent confidence in his opinion, that opinion is unreliable.[22] This case, however, relies on a Pennsylvania state case which specifically held that expert evidence based on a more-likely-than-not standard is insufficient for the jury to rely on in making its determination. This standard is not reflected in Utah case law. In Utah, the plaintiff must prove the fact of damages by evidence that "give[s] rise to a reasonable probability that the plaintiff suffered damage as a result of the breach."[23]

Defendant also cites to *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices & Products Liability Litigation*[24] to support its proposition. However, this case stands for the opposite proposition. In *In re Yasmin and Yaz* the federal district court admitted the challenged expert testimony citing to an Illinois case wherein the state court expressly rejected the argument that expert testimony based on 51 percent likelihood cannot satisfy the reasonable degree of certainty requirement.[25]

In its reply brief, Defendant cites to *Boyett v. City of Washington*[26] to support the proposition that expert opinions must exhibit reasonable scientific certainty. *Boyett* does not address whether opinions based on 51 percent probability meet this standard, but does provide examples of expert testimony that are impermissibly speculative. The court in *Boyett* excluded the testimony of four expert witnesses opining about issues surrounding a prison inmate's death. The shortcomings of the expert opinions rendered in *Boyett*, however, far surpass any alleged

---

[22] *Id.* at 460.

[23] *Atkin Wright & Miles v. Mountain States Telephone and Telegraph Co.*, 709 P.2d 330, 336 (Utah 1985).

[24] No. 3:09-CV-10012-DRH, 2011 WL 6732245 (S.D. Ill. Dec. 16, 2012).

[25] *Id.* at *10.

[26] No. 2:04CV1173, 2006 WL 3422104 (D. Utah Nov. 28, 2006).

shortcomings in Dr. Goldstein's opinions. For example, the court found one expert's opinions "evince[d] speculation" where the expert claimed a certain nurse "would have had" access to certain records and not that she did in fact have access to the records.[27] Another expert stated his conclusions were "more likely than not," however he had not reviewed much of the information provided to him in preparation of his report and failed to disclose any data or other basis for his claims.[28] The Court found yet another expert's conclusions to be "too speculative to constitute reliable medical opinions" where the expert stated a particular laceration was "undoubtedly" caused by a "blunt foreign body," yet, in the same report, stated "it is difficult to find documentation as to exactly when and how these [injuries] occurred" and cited no source which caused him to reach his "undoubted" conclusion.[29]

The Court finds that Dr. Goldstein's opinions do not exhibit the same deficiencies. As previously discussed, Dr. Goldstein based his opinions on J.S.M.'s medical records, family history, and data from numerous tests and questionnaires specified in his report. Further, he has not contradicted his own testimony nor has he failed to review items in evidence that are critical to his analysis. The cases cited by Defendant are unpersuasive. The Court holds that the level of confidence Dr. Goldstein has in his opinions does not justify exclusion but is better addressed though cross-examination and presentation of contradictory evidence and testimony at trial.[30]

---

[27] *Id.* at *7.

[28] *Id.* at *8. Notably, the court did not take issue with the "more likely than not" standard on which the expert based his opinions, but found that the opinions were unsupported.

[29] *Id.* at *10.

[30] *See Daubert*, 509 U.S. at 596.

Finally, Defendant's argument that Dr. Goldstein's opinions are unreliable because his assessment does not consider J.S.M.'s recent improvements is not well taken. Dr. Goldstein concluded his assessment of J.S.M. when J.S.M. was in second grade. Defendant correctly points out that Dr. Goldstein's assessment does consider the improvements J.S.M.'s third-grade teacher reported in some areas Dr. Goldstein concluded were weaknesses at the time of J.S.M.'s assessment. Though the most recent information would certainly be more reliable than information that is one-year outdated, this is not sufficient grounds to invalidate all the data collected in J.S.M.'s second-grade assessment. Again, the best method to address the outdated portions of Dr. Goldstein's data is through cross-examination. Furthermore, Dr. Goldstein has testified that he is aware of the improvements reported by J.S.M.'s third grade teacher and will create an addendum to his assessment that reflects the updated data.[31] Defendant may therefore question Dr. Goldstein regarding J.S.M.'s noted improvements and the effect those improvements have on Dr. Goldstein's challenged opinions.

B.     RELIABILITY OF MS. GALLI'S AND MR. SHARPE'S TESTIMONY

Defendant argues insofar as Ms. Galli and Mr. Sharpe rely on Dr. Goldstein's testimony, their testimony is also unreliable. "Unlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."[32] Ms. Galli and Mr. Sharpe are therefore permitted to rely on Dr. Goldstein's assessment so long as the information cited is reliable. Because the Court finds Dr. Goldstein's

---

[31] Docket No. 74 Ex. 5, at 63.

[32] *Daubert*, 509 U.S. at 592 (citing Fed. R. Evid. 702 and 703).

testimony is sufficiently reliable under Rule 702, no basis exists to exclude the testimony of Ms. Galli and Mr. Sharpe.

C.        HELPFULNESS OF MS. GALLI'S AND DR. GOLDSTEIN'S TESTIMONY

Defendant also argues that the testimonies of Dr. Goldstein and Ms. Galli regarding J.S.M.'s education capabilities are not helpful because the specified testimony is too speculative to assist the jury in determining damages with reasonable certainty. "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility. . . . This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."[33]

The Court has found Dr. Goldstein's opinions to be sufficiently reliable to be presented at trial. Dr. Goldstein's opinions regarding J.S.M.'s secondary education capabilities informed Ms. Galli's assessment of J.S.M.'s future earning capacity. Future earning capacity is relevant and helpful to a jury determining a proper damages award. Defendant will have an opportunity to cross-examine Dr. Goldstein as well as present rebuttal evidence to provide the jury with information regarding any weaknesses in Dr. Goldstein's testimony and, in turn, Ms. Galli's testimony insofar as she relied on Dr. Goldstein. The Court therefore rejects Defendant's contention that the stated testimony does not satisfy Rule 702's "helpfulness" requirement.

---

[33] *Id*. at 591–92.

III.  CONCLUSION

It is therefore

ORDERED that Defendant's Corrected Motion to Preclude Plaintiffs' Experts from

Testifying at Trial that J.S.M. will be Unable to Study Science or Mathematics in College or

Attend Graduate School (Docket No. 74) is DENIED.

DATED this 10th day of January, 2017.

BY THE COURT:

Ted Stewart
United States District Judge