IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SCOTT K. MARLAND and JENNIFER D. MARLAND, as conservators for the minor child, J.S.M.,<br><br>Plaintiffs,<br><br>v.<br><br>ASPLUNDH TREE EXPERT CO., a Pennsylvania corporation,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW<br><br>Case No. 1:14-CV-40 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant's Motion for Judgment as a Matter of Law. Defendant made the Motion orally at the conclusion of Plaintiffs' case-in-chief on February 13, 2017. For the reasons discussed below, the Court will deny Defendant's Motion.

Federal Rule of Civil Procedure 50(a)(1) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

In reviewing a Rule 50 Motion, the Court should review all of the evidence in the record.[1] However, all reasonable inferences are drawn in favor of the nonmoving party and the Court may "not make credibility determinations or weigh the evidence."[2] Judgment as a matter

---

[1] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

[2] *Id.*

1

of law is appropriate "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."[3]  A judgment as a matter of law is appropriate "[i]f there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under the controlling law."[4]

In this matter, Plaintiffs bring a negligence claim against Defendant.  "The essential elements a party asserting negligence must prove are:  (1) a duty of reasonable care owed by the defendant to plaintiff; (2) a breach of that duty; (3) the causation, both actually and proximately, of injury; and (4) the suffering of damages by the plaintiff."[5]

1. DUTY

The Court has determined that the duty of care Defendant owed to Plaintiffs is properly stated in § 324A of the Restatement (Second) of Torts. Section 324A states:

> One who undertakes gratuitously for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Plaintiffs have presented evidence that Defendant has undertaken to render services to Bountiful City Light & Power ("BCLP"), which Defendant should recognize as necessary for the

---

[3] *Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996) (quoting *Q.E.R., Inc. v. Hickerson*, 880 F.2d 1178, 1180 (10th Cir. 1989)).

[4] *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores*, 82 F.3d 1533, 1546–47 (10th Cir. 1996)).

[5] *Gregory v. Fourthwest Investments, Ltd.*, 754 P.2d 89, 91 (Utah Ct. App. 1988) (citation and internal quotation marks omitted).

protection of a third person. In the Court's Order denying summary judgment, it found as follows:

> Utah law imposes on utility companies like BCLP the highest degree of care to prevent people from coming in contact with high-voltage electricity. Line clearance is necessary, not only to prevent interruption of service, but also to prevent injuries that might result should tree limbs come into contact with electrical wires. Thus, Asplundh should have recognized that the services it provided were necessary for the protection of third parties and their property.[6]

Furthermore, Mr. Edward Boyd, a representative and employee of Defendant, testified that BCLP hired Defendant to perform line clearance for BCLP and that BCLP budgeted $185,000 for Defendant's services. Mr. Boyd further testified that Defendant was well aware that line clearance is a dangerous job and, if not done correctly, can lead to serious harm or injury. Defendant therefore owed a duty to Plaintiffs if Plaintiffs present evidence that any one of subsections (a), (b), or (c) of § 324A applies.

Subsection (a) "requires some change in conditions that increases the risk of harm to the plaintiff over the level that existed before the defendant became involved."[7] "Subsection (b) comes into play as long as the party who owes the plaintiff a duty of care has delegated to the defendant any particular part of that duty."[8] Subsection (c) applies when the harm is suffered because of reliance of the other or the third person upon the undertaking. "The reliance element

---

[6] Docket No. 114, at 4–5 (citing *Brigham v. Moon Lake Elec. Ass'n,* 470 P.2d 393, 395 (Utah 1970)).

[7] *Alder v. Bayer Corp., AGFA Div.*, 2002 UT 115, ¶ 30, 61 P.3d 1068 (quoting *Canipe v. Nat'l Loss Control Serv. Corp.*, 736 F.2d 1055, 1062 (5th Cir. 1984).

[8] *Id.* ¶ 32 (quoting *Canipe*, 736 F.2d at 1062–63).

of subsection (c) is satisfied if, in relying on the defendant's undertaking, the employer 'neglect[s] or reduces[s]' its own safety program."[9]

First, Plaintiffs have presented evidence that Defendant's failure to exercise reasonable care increased the risk of harm. Mr. Boyd, Mr. Ronald Burge, and Plaintiffs' expert arborist, Mr. Jaak Gilmore each testified that a particular tree trimming cut known as a stub cut will increase the growth speed of a tree limb. The faster a tree limb grows around a power line, the more likely it is that the limb will cause injury. Mr. Gilmore testified that Defendant performed a stub cut on the subject tree. Therefore, Plaintiffs presented evidence that Defendant's failure to exercise reasonable care increased the risk of harm.

Second, Plaintiffs have presented evidence that Defendant has undertaken to perform a duty owed by another to the third person. As previously discussed, the Court has found that BCLP has a duty to prevent their power lines from causing harm to others. Mr. Boyd testified that Defendant willingly undertook the duty to prevent tree limbs from coming into contact with BCLP's power lines and therefore preventing potential harm.

Third, Plaintiffs have presented evidence that J.S.M. suffered because of his reliance on Defendant's undertaking. Mr. Boyd testified that BCLP relied on Defendant to perform line clearance through a "feeder" system. If Defendant completed a particular feeder, BCLP would regard that area as completed and would therefore not clear the power lines located in that feeder. Plaintiffs' electrical engineering expert, Dr. Scott Kimbrough, testified that J.S.M. suffered harm as a result of his electrocution. Mr. Gilmore testified that proper removal or trimming of the subject tree would have prevented the wire from severing and, as a result,

---

[9] *Id.* ¶ 33 (quoting *Canipe*, 736 F.2d 1063) (alterations in original).

prevented J.S.M.'s electrocution. Plaintiffs have therefore presented sufficient evidence that subsection (c) applies to this case.

2. BREACH

Plaintiffs argue that Defendant breached its duty of care in (1) failing to remove the subject tree and, in the alternative, (2) failing to properly trim the tree to prevent the tree limb from growing into the power line. Plaintiffs have presented sufficient evidence supporting both of these arguments.

First, Plaintiffs have presented evidence that Defendant breached its duty by not removing or suggesting removal of the subject tree. Plaintiffs introduced an invoice showing that Defendant trimmed the subject tree on September 27, 2005, and that Defendant did not suggest removal of the subject tree on that invoice. Mr. Gilmore testified that Defendant should have pushed for removal of the subject tree because of the tree's proximity to the power lines and because the tree was a fast growing tree. Mr. Boyd testified that BCLP never ignored or rejected Defendant's recommendation to remove a tree. Lyle Henderson, the owner of the property, testified that neither Defendant nor BCLP ever asked for his permission to remove the tree. Plaintiffs have therefore presented sufficient evidence that Defendant breached its duty of care by not removing or suggesting removal of the subject tree.

Second, Plaintiffs have presented sufficient evidence that Defendant breached its duty by performing an improper stub cut that sped up the growth of the branch that caused the accident. As previously stated, Plaintiffs introduced an invoice from Defendant to BCLP showing that Defendant trimmed the subject tree on September 27, 2005. Lyle Henderson testified that he always gave permission for the tree trimmers to do what they needed to do to keep the branches

away from the power lines. Mr. Gilmore testified that, based on his review of photographs of the branch that caused the incident, the branch was trimmed with a stub cut around September of 2005. Mr. Boyd, Mr. Burge, and Mr. Gilmore each testified that a stub cut violates industry standards and that, in accordance with industry standards, the branch should have received a collar cut (also referred to as a final cut) which would significantly slow the growth of the branch. They each further testified that industry standards dictate that a proper tree trim should last four to five years, even if the tree is a fast going tree like the tree at issue. The branch failed three years and nine months after Defendant trimmed the tree according to the invoice. Plaintiffs have therefore presented sufficient evidence that Defendant breached its duty of care by improperly trimming the subject branch with a stub cut.

3.  CAUSATION

Plaintiffs have presented sufficient evidence to show that J.S.M.'s injuries—both physical and cognitive—were a result of Defendant's negligence.

Dr. Kimbrough, testified that the subject branch fell onto a power line, causing the line to melt, sever, and subsequently fall onto the swing set were J.S.M. was playing. Dr. Kimbrough further testified that the fallen wire severely shocked J.S.M. Mr. Gilmore testified that if the subject tree had been removed or trimmed properly, the branch would not have grown out over the line, and thus would not have caused the incident at issue. Further, Plaintiffs' meteorology expert testified that the wind was not strong enough on the day of the incident to cause the branch to break. He also testified that there were no other weather conditions that would have caused the branch to break.

Plaintiffs' medical expert, Dr. Judith Gooch, M.D., testified that J.S.M.'s physical injuries were a result of his electrocution. Plaintiffs' neuropsychology expert, Dr. Sam Goldstein, as well as Dr. Gooch, testified that J.S.M.'s cognitive/psychological injuries were caused by his electrocution. Plaintiffs have therefore presented sufficient evidence to show that Defendant caused J.S.M.'s injuries.

4.  DAMAGES

Plaintiffs must prove that damages occurred and prove the amount of those damages. The parties have stipulated that J.S.M. has suffered $193,760.00 of damages related to past medical expenses. Plaintiffs have therefore met their burden to show evidence of the existence and amount of damages.

Plaintiffs' are requesting damages related to lost future earnings on the basis that J.S.M. will not be able to attain the advanced education he otherwise may have absent his electrocution. Defendant argues Dr. Goldstein's opinions that J.S.M. will not study in areas of mathematics or sciences at an undergraduate level and will not go to graduate school in any area of study are too speculative for a reasonable jury to find in favor of the Plaintiffs. The Court disagrees.

Dr. Goldstein is a Board certified neuropsychologist. He testified that he based his opinions on a review of J.S.M.'s medical records, J.S.M.'s family history, questionnaires given to J.S.M.'s teacher and parents, and a five-hour neuropsychological evaluation administered to J.S.M. in person. Dr. Goldstein testified that the evaluation showed an unexpected disparity between his scores related to knowledge and his scores related to achievement, which, taken in light of his family's history, led to the conclusion that J.S.M. had suffered some level of brain injury as a result of the electrocution. Dr. Goldstein further testified that scores related to

achievement are better predictors of what a person will accomplish in their life and that J.S.M.'s weaknesses will continue to be an obstacle for him as he moves forward through school, such that, to a reasonable neuropsychological probability, J.S.M. will not be able to study mathematics or science in college and will not be able to obtain a post-graduate degree in any field of study. The Court finds that Dr. Goldstein's opinions are sufficiently supported and that there is a sufficient basis for the jury to make a factual determination regarding lost future income.

Because Plaintiffs have presented sufficient proof that (1) Defendant owed Plaintiffs a duty, (2) that Defendant breached that duty, (3) which caused (4) J.S.M. to suffer damages—including damages related to lost future income, the Court denies Defendant's Motion for Judgment as a Matter of Law.

It is therefore

ORDERED that Defendant's Motion for Judgment as a Matter of Law is DENIED.

DATED this 16th day of February, 2017.

BY THE COURT:

_____
Ted Stewart
United States District Judge